UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LAYLA SALIBA, GEOFFREY KIGONGO, GEORGE RAUCH, and KWAINE THOMPSON JR., individually and on behalf of all others similarly situated,

                         Plaintiffs,

    -against-

HANOVER CAPITAL GROUP LLC,
PREMIUM MERCHANT FUNDING ONE, LLC,
HAIM LLALOUZ and YANATHON LLALOUZ,

                         Defendants.
------------------------------------------------------------------x

Docket No. 24 Civ. 401

**CLASS ACTION COMPLAINT**

*Jury Trial Demanded*

Plaintiffs, LAYLA SALIBA, GEOFFREY KIGONGO, GEORGE RAUCH, and KWAINE THOMPSON JR., individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their attorneys, HELD & HINES, LLP, as and for their Complaint against HANOVER CAPITAL GROUP LLC, PREMIUM MERCHANT FUNDING ONE, LLC, HAIM LLALOUZ and YANATHON LLALOUZ ("Defendants"), hereinafter state and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and all others similarly situated alleging that Defendants willfully failed to pay Plaintiffs and the putative class minimum wages and overtime compensation, and, commissions, pursuant to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and that they are entitled to recover from Defendants: (1) unpaid minimum wage compensation; (2) unpaid overtime compensation; (3) unpaid commissions; (4) liquidated damages equal to that amount; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

2. Plaintiffs further allege on behalf of themselves and all others similarly situated that, pursuant to Article 19 of the New York Labor Law, § 650 *et seq.*, and, the supporting New York State Department of Labor Regulations, 12 NYCRR Part 142, and NYLL § 191 (collectively referred to as, "the NYLL," herein), they are entitled to recover from the Defendants: (1) unpaid minimum wage and overtime compensation; (2) unpaid "spread of hours" premium for each day they worked in excess of ten (10) hours; (3) unpaid commissions; (4) liquidated damages; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).

4. This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims arise out of the same nucleus of operative facts as Plaintiff's FLSA claims.

6. This Court has personal jurisdiction over Defendants because they regularly conduct business in New York, have sufficient minimum contacts to New York, including their principal place of business, and intentionally avail themselves of this jurisdiction by marketing and selling products and services in and from New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District.

Defendants caused harm to Plaintiffs and the Class Members through their actions in this District. Additionally, Defendants' principal place of business is located within the District. Venue in this District is also proper pursuant to 28 U.S.C. § 1391(b) as the defendants reside in this judicial district.

## PARTIES

8. At all times hereinafter mentioned, Plaintiff Layla Saliba, was and remains a resident of the State of New York, New York County.

9. At all times hereinafter mentioned, Plaintiff Geoffrey Kigongo, was and remains a resident of the State of New York, Rockland County.

10. At all times hereinafter mentioned, Plaintiff George Rauch, was a resident of the State of New Jersey, Bergen County. Plaintiff George Rauch currently resides in the state of Texas, Dallas County.

11. At all times hereinafter mentioned, Plaintiff Kwaine Thompson, Jr., was and remains a resident of the State of New York, New York County.

12. At all times hereinafter mentioned, defendant Hanover Capital Group LLC (hereinafter "Hanover") was and remains a domestic limited liability company organized and existing by virtue of the laws of the State of New York.

13. Upon information and belief, Hanover's principal place of business is located in New York County, New York.

14. At all times hereinafter mentioned, defendant Premium Merchant Funding One, LLC (hereinafter "Premium") was and remains a domestic limited liability company organized and existing by virtue of the laws of the State of New York.

15. Upon information and belief, Premium's principal place of business is located in New York County, New York.

16. At all times hereinafter mentioned, Defendants Haim Llalouz was a member of Hanover.

17. At all times hereinafter mentioned, Defendants Yanathon Llalouz was a member of Hanover.

18. At all times hereinafter mentioned, Defendant Haim Llalouz was and remains a resident of the State of New York, Nassau County.

19. At all times hereinafter mentioned, Defendant Yanathon Llalouz was and remains a resident of the State of New York, Nassau County.

## STATEMENT OF FACTS

20. According to its website, Defendant, Hanover Capital Group, is a consulting company that works with qualified lenders to provide services and financial help, such as giving small business loans, equipment financing, factoring, purchase order financing, and help with commercial mortgages nationwide. *See* https://www.hanovercapitalgroup.com/aboutus

21. According to its website, Defendant, Premium Merchant Funding One, LLC, offers merchant cash advances, small business loans, equipment financing, factoring, purchase order financing, and commercial mortgages nationwide. *See* https://www.pmfus.com/about-pmf/

22. Upon information and belief, Hanover Capital Group is a subsidiary company of Premium Merchant Funding.

### *Defendants Unlawfully Misclassified Plaintiffs and Putative Class Members as Independent Contractors Rather Than Employees*

23. Upon hiring each Plaintiff and putative class members as a Sale Representative, Defendants unlawfully misclassified them as independent contractors rather than employees.

24. Defendants employed Plaintiffs and putative class members as Sale Representatives to be paid by commission for their sales.

25. Upon hiring Plaintiffs and putative class members, they were given the task of selling Hanover products and services.

26. Throughout Plaintiffs and putative class members' employment at Hanover, Defendants treated Plaintiffs and putative class members as employees rather than independent contractors.

27. At all times alleged herein, Defendants directed when, where and how Plaintiffs and putative class members performed their work. Defendants required Plaintiffs to work at the Defendant's offices.

28. At all times alleged herein, Defendants insisted that Plaintiffs and putative class members follow a strict schedule provided to them by Defendants.

29. At all times alleged herein, Defendants required updates on sales and progress made towards closing deals with potential clients.

30. At all times alleged herein, Plaintiffs and putative class members performed most of their work using company-provided equipment, tools, and materials such as documents providing information to mention to potential clients.

31. At all times alleged herein, Plaintiff and putative class members were hired for an indefinite period of time rather than for a certain amount of time based around the completion of a project or goal.

32. At all times alleged herein, Defendants received a high degree of benefit in regard to the work Plaintiffs and putative class members were primarily engaged in. Plaintiffs and putative class members are the ones that bring in the clients that Defendants profit off of.

33. The responsibilities and duties distributed to Plaintiff and putative class members, such as finding clients, advertising, and selling Defendant's products and services are central to the business operations and significantly affect the Defendant's business outcomes.

34. At all times alleged herein, Plaintiffs and putative class members can terminate their employment without any liability.

35. Defendants can discharge plaintiffs and putative class members without liability.

36. At all times alleged herein, Plaintiffs and putative class members did not get to negotiate terms of commission.

37. At all times alleged herein, Defendants required updates on sales and progress made towards closing deals with clients.

38. At all times alleged herein, Defendants trained Plaintiffs and putative class members on how to perform and operate their positions as indicated by the Sale Representative Tier Payments document.

39. Plaintiffs and putative class members were, at times, reimbursed for travel expenses and received bonuses for their work through CashApp from Defendants.

40. Defendants directly supervised the work of Plaintiffs and putative class members, required them to come into their office, and had authority over the tactics they used to carry out their duties.

41. Defendants rank their commissioned Sales Representatives in tiers numbered one through five, five being the top tier and one being the lowest tier.

42. Every tier has a different "pay out" meaning as Plaintiffs and putative class members moved up tiers, they received better commissions. For example, Tier One received 30% commission and required Sale Representatives to "complete 10 application obligations to senior

broker" while Tier Two increased commission to 32.5% but requires "4 Total Cross-sales" and a "minimum of 6 deals."

43. Defendants determine Sale Representative tier ranks by other elements such as: (1) time working at Hanover (top tier requires 2 years working for Hanover), (2) the amount of Defendant sponsored and created trainings Plaintiffs and putative class members attended/completed, for example the fourth tier requires 60 trainings, and, (3) entry into the fourth tier indicates "Tier 4 is based completely on a management decision primarily based on growth in training and developing new reps, consistent individual funding, overall growth and value provided to Team & Hanover Capital Group."

44. Defendants' Tier system requires that all entry level sale representatives complete a two-week training regimen.

45. Defendants require that all entry level Sales Representatives split their first five qualified closed deals with other reps, team leader or senior broker.

46. Defendants exercise a high level of control over Plaintiffs and putative class members, go to great extents of investment in training regarding Plaintiffs and putative class members, exercises ultimate control over Plaintiffs and putative class members' opportunity of making profit, and has an expectation of long-term commitment in return for promotions.

### *Hanover Failed to Pay Plaintiffs and Putative Class Members the Minimum Wage and Provide Accurate Wage Statements in Accordance with Federal and State Wage Laws*

47. Pursuant to the Fair labor Standards Act, employers must pay minimum wage and overtime to commission-based employees. If the employee's commission fails to meet the minimum wage, employers must make up the difference. Similarly, if an employee works enough hours to qualify for overtime, the employer must pay it.

48. Defendants failed to compensate Plaintiffs and putative class members adequately enough to equal or better the lowest legal minimum wage when it had a responsibility to do so.

49. New York Labor Law, Article 6, § 195(3), requires employers to supply their employees with an accurate statement with every payment of wages, listing accurate gross wages, deductions, and accurate net wages.

50. Defendants have not produced accurate statements with every payment of wages, listing accurate gross wages, deductions, and accurate net wages for their employees. Instead, Defendants would pay Plaintiffs and putative class members through CashApp.

51. Plaintiff Layla Saliba (hereinafter, "Saliba") was a sales representative at Defendants' New York offices.

52. Saliba worked a total of approximately 105 hours as a Sales Representative for Defendants.

53. Saliba was not compensated by any means for the hours she worked.

54. Due to not receiving any form of commission or compensation for her hours and work, Layla complained to the New York offices manager, Philip Heilick, who, in response to her complaint, told her that she was "not getting paid" for the time and the work she has done.

55. Defendants hired Plaintiff George Rauch (hereinafter, "Rauch") on or about January of 2023 at their New York offices.

56. Rauch worked for about 4 months diligently working to secure deals with clients before being constructively terminated on or about April 5, 2023 due to lack of pay.

57. During that time, Defendants did not pay Rauch an hourly wage or overtime wages.

58. During the 4 months that Rauch was employed by Defendants, Rauch often worked more than forty (40) hours per week.

59. Rauch was paid an overall total of $200.00, which was only to reimburse him for travel expenses and winning company-based competitions.

60. During that same period, Rauch periodically worked for more than ten hours per day, but did not receive any spread-of-hours pay as required by New York Labor Laws.

61. Plaintiff, Geoffrey Kigongo, (hereinafter, "Kigongo") was employed by Defendants from approximately February 5, 2023 to May 5, 2023.

62. Kigongo worked for approximately thirty-five (35) hours each week.

63. Kigongo was never compensated for his hours of work, besides receiving a $50.00 payment on CashApp from Haim Llalouz for no particular reason.

64. Plaintiff Kwaine Thompson, Jr., (hereinafter, "Thompson") was employed by Defendants from March of 2023 until he was terminated in June of 2023.

65. During that time Thompson averaged working forty (40) hours per week.

66. Thompson earned a total of $4,000.00 in commissions during his employment for the sales he made.

67. Upon information and belief, Hanover refused to pay Thompson his full percentage of commission.

68. Instead, Thompson was only paid a 15% commission; however, he was owed at least a 30% commission upon information given in the Sale Representative Payment Tier sheet.

69. The commission Thompson received does not equate to the minimum wage for the hours he worked.

70. Thompson was fired from Hanover in order for Defendants to avoid paying him a hefty commission for a lucrative deal.

71. Defendants instructed Plaintiffs and putative class members to advertise a Covid Relief Fund and a Business Enhancement Program with falsely exaggerated low interest rates without Plaintiffs and putative class members' knowledge that the rates were false.

72. Plaintiffs and putative class members struggled or were unable to close deals because clients would not qualify for the rates they advertised.

73. Plaintiffs and putative class members would then pass the leads they worked on to management, who would then close the deal and take the profits, without any compensation to Plaintiffs and putative class members.

74. Due to Defendants' taking potential sales away from Plaintiffs and putative class members and their purposeful misclassification of Plaintiffs and putative class members as independent contractors rather than employees, Plaintiffs and putative class members were not afforded a real opportunity to gain any meaningful profit from their employment with Defendants.

75. Plaintiffs and putative class members allege that the aforesaid wage violations were willful.

## RULE 23 ALLEGATIONS

76. Plaintiffs seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), individually, on their own behalf, as well as on behalf of those putative class members who, during their employment, were subjected to violations of the NYLL and the FLSA.

77. Plaintiffs seek certification of the following two Fed. R. Civ. P. 23 classes (collectively, "Rule 23 Plaintiffs"):

> **Employment Misclassification Class**
>
> Current and former employees of Defendants who commenced their employment with Defendants in or after

January of 2018 and who were misclassified as independent contractors rather than employees.

**Violation of Wage Laws Class**

Current and former employees of Defendants who commenced their employment with Defendants in or after January 2018 and who were deprived of receiving at least the minimum legal wage, and/or did not receive overtime compensation, and/or did not receive "spread of hours" premium wages, and/or did not receive earned commissions.

78. All the requirements under Rule 23(b)(3) are satisfied, as set forth below.

79. Plaintiffs and the Rule 23 putative class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Plaintiffs and the Rule 23 putative class have suffered a concrete injury in fact and as a result have been actually harmed by Defendants' underpayment and failure to pay the entirety of Plaintiffs' and the putative class's lawfully due commissions or wages. Plaintiffs and the Rule 23 putative class were deprived of their ability to purchase with their timely wages, invest their timely wages, accrue interest on their timely wages, or otherwise utilize the value that their wages would have held had they been paid timely.

### Numerosity & Ascertainability

80. During the applicable limitations period, the Defendants have, in total, employed at least 4 employees that are putative members of this class.

81. The precise number of the Rule 23 putative class is readily ascertainable through a review of Defendants' personnel, time, and payroll records.

**Common Questions of Law and/or Fact**

82. There are questions of law and fact common to each Rule 23 putative class member that predominate over any questions solely affecting individual members of the Rule 23 class, including but not limited to the following: (1) the duties that the Defendants required and require each Plaintiff and Rule 23 putative class member to perform; (2) the manner of compensating each Plaintiff and Rule 23 putative class member; (3) whether the Defendants compensated Plaintiffs and Rule 23 putative class members less than their maximum eligible commissions, and did they fail to pay them at least minimum wage through either commission or hourly pay for their labor in accordance with the FLSA; (4) whether the Defendants furnished and furnish Plaintiffs and Rule 23 putative class members with accurate wage statements, accurately containing the information required by N.Y. Lab. Law § 195(3); (5) whether the Defendants have any affirmative defenses to any of the Plaintiffs and Rule 23 putative class members' claims; (6) whether the Defendants' actions with respect to the Plaintiffs and Rule 23 putative class members were in violation of the NYLL and the FLSA; and (7) if so, what constitutes the proper measure of damages.

**Typicality of Claims and/or Defenses**

83. As described in the "Statement of Facts" section above, the Defendants employed the Plaintiffs and Rule 23 putative class members within the meaning of the NYLL. Plaintiffs claims are typical of the claims of the putative class members whom they seek to represent, such that they work and/or have worked for Defendants as sales representatives; Defendants failed to pay them the entirety of their eligible commissions rates; Defendants illegally misclassified them as 1099 Independent Contractors instead of employees; Defendants failed to pay them at least minimum wage; and Defendants did not provide them with accurate wage statements for the payments they did receive. Plaintiffs and the Rule 23 putative class members enjoy the same

statutory rights under the NYLL to be paid their fully earned commissions or wages even if they failed to sell products, and to be furnished with accurate wage statements on each payday.

84. Plaintiff and the Rule 23 putative class members have all sustained similar types of damages as a result of the Defendants' failure to comply with the NYLL and FLSA. Plaintiffs and the Rule 23 putative class members have all suffered injury, including but not limited to lack of compensation and/or untimely compensation due to the Defendants' common policies, practices, and patterns of conduct. Thus, Plaintiffs' claims and/or Defendants' defenses to those claims are typical of the Rule 23 putative class members' claims and Defendants' defenses to those claims.

### Adequacy

85. Plaintiffs, as described above, worked the same or similar job duties as a sales representative as the Rule 23 putative class members throughout each of their employment with Defendants. Defendants did not pay Plaintiffs all of their earned and owed commissions or wages for their work while employed, nor did they furnish Plaintiffs with accurate wage statements, which is substantially similar to how Defendants paid and treated the Rule 23 putative class.

86. Plaintiffs fully anticipate providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer. Thus, Plaintiffs will properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

87. Additionally, Plaintiffs' counsel, Held & Hines, LLP ("HH"), has substantial experience in the field of employment law. HH is a well-respected litigation firm that represents Plaintiffs primarily in a wide variety of employment matters, including individual and class action litigation concerning wage and hours, discrimination, and harassment claims among others. HH is

dedicated to its clients, working tirelessly to achieve the best outcome for them, sometimes at a significant cost to the firm in terms of time, resources, and financial risk.

88. Plaintiffs' counsel has handled numerous employment cases in federal districts courts, including Rule 23 class actions and FLSA collective actions. Accordingly, Plaintiffs' counsel will fairly and adequately represent the interests of the putative class and will take all steps necessary to obtain class certification and appointment as class counsel.

### Superiority

89. A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of evidence, effort, and expense that numerous individual actions would engender. This action will result in the orderly and expeditious administration of class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

90. Plaintiffs have no, or very few, material facts relating to the Rule 23 putative class claims that are atypical of those of the putative class. Indeed, at all relevant times herein, the Defendants treated Plaintiffs identically, or at the very least, substantially similar to, the Rule 23 putative class.

91. Any lawsuit brought by another of Defendants' sales representatives would be identical to a suit brought by any other such employee for the same violations. Thus, separate litigation would risk inconsistent results.

92. Accordingly, this means of protecting the Rule 23 putative class members' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

## AS AND FOR THE FIRST CAUSE OF ACTION:
## VIOLATION OF THE FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAWS BY WILLFUL MISCLASSIFICATION OF THEIR EMPLOYEES AS INDEPENDENT CONTRACTORS

93. Plaintiffs and putative class members repeat and realleges the allegations contained in each of the preceding paragraphs with the same force and effect as though same if fully set forth herein.

94. The Fair Labor Standards Act and New York Labor Law provide that it is unlawful for any person or employer to engage in willful misclassification of an individual/employee as an independent contractor.

95. Defendants have and continue to illegally and willfully misclassify their employees as independent contractors so as to avoid paying the minimum wage set out in the Fair Labor Act and New York Labor Law.

96. Plaintiffs and putative class members are employees of Defendants and not independent contractors, as can be determined by the amount of control Defendants exercise over Plaintiffs and putative class members.

97. Defendants exercise control over: (1) job training; (2) direct when, where and how work is done; (3) the duration of relationship between them and Plaintiffs; (4) the flexibility of Plaintiffs and all others similarly situated individual's work schedule; (5) the commission Plaintiffs and putative class members are allowed to receive; (6) Defendants' ability to unilaterally discharge Plaintiffs and putative class members, and (7) Defendants require reports and updates on all leads and possible deal closings between the Plaintiffs and putative class members and potential clients.

Additionally, Defendants offered and paid Plaintiffs and putative class members' travel cost and bonuses. Defendants provide the facility along with tools and materials to complete the work they require Plaintiffs and putative class members to do. Plaintiffs and putative class members are central to the business operations and significantly affect the business outcomes.

98. Pursuant to New York Labor Law and The Fair Labor Standards Act, employers such as the Defendants who intentionally misclassify their employees as Independent Contractors in order to avoid fair compensation to employees shall be liable to the employees for the wages that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages. The Defendants have violated the New York Labor Law and the Fair Labor Standards Act by intentionally misclassifying Plaintiffs and putative class members for all compensable time. Plaintiffs, on behalf of themselves and the putative class members, seek the amount of underpayments based on the Defendants' failure to pay the wages owed due to Defendants' intentional misclassification of Plaintiffs and putative class members provided by the New York Labor Law and the Fair Labor Standards Act, as well as reasonable attorneys' fees and costs of the action, and such other legal and equitable relief as the Court deems just and proper.

### AS AND FOR THE SECOND CAUSE OF ACTION:
### VIOLATION OF NEW YORK WAGE LAWS

99. Plaintiffs and putative class members repeat and realleges the allegations contained in each of the preceding paragraphs with the same force and effect as though same if fully set forth herein.

100. Defendants have engaged and continue to engage in illegal and improper wage practices. Pursuant to New York Labor Law §§ 190 *et seq.*, including but not limited to §§ 190, 191, 193, 198, and 663(1), the Defendants had and continue to willfully fail to pay Plaintiffs and putative class members minimum wages because Defendants with scienter misclassify Plaintiffs

and putative class members as independent contractors as to avoid paying the wages they owe to their employees. The Defendants are not permitted by state or federal law or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiffs and putative class members wages that are the subject of this lawsuit. The Defendants were not authorized by Plaintiffs or, upon information and belief, any other similarly situated individuals to withhold, divert, or deduct any portion of their unpaid wages that are the subject of this lawsuit.

101.   Pursuant to New York Labor Law § 198, employers such as the Defendants who intentionally fail to pay their employees' wages in conformance with New York Labor Law shall be liable to the employees for the wages that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages. The Defendants have violated the New York Labor Law by failing to pay Plaintiffs and putative class members for all compensable time. Plaintiffs, on behalf of themselves and putative class members, seek the amount of underpayments based on the Defendants' failure to pay the wages owed provided by the New York Labor Law, as well as reasonable attorneys' fees and costs of the action, and such other legal and equitable relief as the Court deems just and proper.

**AS AND FOR THE THIRD CAUSE OF ACTION:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT BY FAILURE TO MAKE UP THE DIFFERENCE BETWEEN COMMISSION AND MINIMUM WAGE**

102.   Plaintiffs and putative class members repeat and realleges the allegations contained in each of the preceding paragraphs with the same force and effect as though same if fully set forth herein.

103.   Defendants have engaged and continue to engage in illegal and improper wage practices. The Fair Labor Standards Act declares that employers must pay minimum wage and

overtime to commission-based employees. If the employee's commission fails to meet the minimum wage, employers must make up the difference.

104. Plaintiffs and putative class members were not paid the minimum wage based on the commissions and labor.

105. Accordingly, Defendants are obligated and responsible for making up the difference between Plaintiffs and putative class members actual earnings and the minimum wage.

## AS AND FOR THE FOURTH CAUSE OF ACTION:
## NEW YORK LABOR LAW, ARTICLE 19, FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS AND ABIDE BY NEW YORK LABOR LAW § 191(C) TIME OF PAYMENT REQUIREMENTS

106. Plaintiffs repeat and realleges the allegations contained in each of the preceding paragraphs with the same force and effect as though same if fully set forth herein.

107. Defendants have and continue to willfully fail to supply Plaintiffs and putative class members, as required by New York Labor Law, Article 6, § 195(3), with an accurate statement with every payment of wages, listing accurate gross wages, deductions, and accurate net wages.

108. Through Defendants knowing or intentional failure to provide Plaintiffs and putative class members with the accurate wage statements required by the New York Labor Law, Defendants had and continue to willfully violate New York Labor Law, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

109. Due to Defendants' willful violation of New York Labor Law, Article 6, § 195(3), Plaintiffs and putative class members are entitled to damages of $5,000,000.00 for the wages Defendants failed to provide Plaintiffs and putative class members with an accurate wage statement, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided by New York Labor Law, Article 6, § 198(1-d).

110. Additionally, New York Labor Law § 191(c) requires that a commission salesperson shall be paid the wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment, but not less frequently than once in each month and not later than the last day of the month following the month in which they are earned.

111. Defendants have not provided this consistency of payment as they have not provided any wages they owe to Plaintiffs and putative class members.

## AS AND FOR THE FIFTH CAUSE OF ACTION:
## NEW YORK LABOR LAW, SECTION 191

112. Plaintiffs and putative class members repeat and realleges the allegations contained in each of the preceding paragraphs with the same force and effect as though same if fully set forth herein.

113. Section 191 of the NYLL guarantees employees are timely paid "in accordance with the agreed terms of employment."

114. Defendants violated NYLL ¶ 191 by using Plaintiffs and putative class members to develop leads through promoting a Relief Covid Relief Fund and a Business Enhancement Program as a bait and switch for Defendants to then close deals on other products.

115. Defendants thereby stole work from Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against each of the defendants, jointly and severally, an award of compensatory damages in an amount to be determined at trial, an award of statutory and/or treble damages in an amount to be determined at trial, and an award of punitive damages in an amount to be determined at trial, together with such other and further relief that this Court deems just and proper.

Dated: Brooklyn, New York
January 18, 2024

          Respectfully submitted,

          HELD & HINES, LLP

          <u>*/s/ Philip M. Hines*</u>
          Philip M. Hines, Esq.
          *Attorneys for Plaintiffs and Putative Class*
          2004 Ralph Avenue
          Brooklyn, New York 11234
          (718) 531-9700
          phines@heldhines.com